**William BROWN et al., Appellants,**

**v.**

**John W. GRAY'S EXECUTRIX (Carrie L. Gray) et al., Appellee.**

Court of Appeals of Kentucky.

Dec. 17, 1954.

As Modified on Denial of Rehearing March 25, 1955.

Dodd & Dodd, Allen P. Dodd, Louisville, for appellants.

Henry V. B. Denzer, Freeman Robinson, Louisville, for appellee.

CULLEN, Commissioner.

The judgment below awarded the estate of John W. Gray, deceased, a prior claim on the proceeds resulting from a receiver's sale of the assets of the Art Metals Company, an insolvent corporation. The claim was based upon a note which John Neofes, William Brown and Sheldon Hicks had executed to Gray, prior to his death. The three men had purchased the Art Metals Company from Gray who was the owner of all the stock of the company, and the note was for a portion of the purchase price. The judgment also imposed personal liability against Neofes, Brown and Hicks upon the note. Girth Hicks, father of Sheldon Hicks, was awarded a claim against the company for money he had advanced to it, but his claim was adjudged to be inferior to that of the Gray estate. Since the assets of the company are not sufficient to pay the claim of the Gray estate, Girth Hicks will receive nothing on his inferior claim.

The appeal is by Brown, Sheldon Hicks and Girth Hicks. They maintain that the sale of the corporation by Gray to Neofes, Brown and Sheldon Hicks should have been set aside, and the note voided, because of fraud and misrepresentation by Gray, and because of collusion between Gray and Neofes. Girth Hicks further maintains that his claim should have been adjudged superior to that of the Gray estate.

The situation is somewhat confusing and complicated, principally because the parties paid little regard to the fact that the Art Metals Company was a corporation.

Neofes, Brown and Sheldon Hicks entered into an agreement with Gray to buy the company for $22,300. They paid Gray $5,000 in cash (which was loaned to them by Girth Hicks), and gave Gray their personal note for $17,300. Gray endorsed the stock certificates in blank, and they were turned over to Girth Hicks as security for the $5,000 he had advanced. Gray also executed, *in the name of the company*, a bill of sale for all the assets of the company, which ran to Neofes, Brown and Sheldon Hicks. The latter three men then, in turn, executed a chattel mortgage on the assets, in favor of the *Art Metals Company*. The mortgage recited that it was to secure the $17,300 note, which of course ran to Gray personally.

Subsequently, Girth Hicks made several advances of money to the company, for working capital, totalling some $5,300.

The company continued in operation only for a short period of time, during which $1,300 was paid on the Gray note. The company then got into serious financial difficulties, and Brown and Sheldon Hicks fell out with Neofes. Gray then brought action upon his note, and asked that the mortgage be reformed so as to run to him rather than to the company. Brown and Sheldon Hicks counterclaimed, asserting fraud and collusion, and Girth Hicks intervened to set up his claims.

Gray died while the action was pending, and his executrix was substituted as plaintiff.

The lower court took the view that the bill of sale by the company to Neofes, Brown and Sheldon Hicks was a nullity, because it was not properly authorized by a corporate resolution; and therefore, the chattel mortgage by the three men also was a nullity, because they had nothing to mortgage. Accordingly, the court deemed it useless to reform the mortgage to run to Gray. However, the court was of the opinion that Gray's estate was entitled to an equitable lien against the assets of the company, in the nature of a purchase-money lien, and that this lien took precedence over the claims of Girth Hicks.

We think the court properly awarded the Gray estate a prior lien. It is clear from the evidence that Girth Hicks knew, at the time he advanced money to the company, that Gray had not been paid, and he was familiar with all details of the transaction. Girth Hicks contends that he advanced money to the company on the faith of the chattel mortgage running to the company, covering the assets, but it is perfectly plain from the evidence that he knew this mortgage was intended to secure

the note to Gray. In fact, the mortgage recited that it was to secure a note for $17,300, and Girth Hicks knew the note ran to Gray.

■ The claim of collusion and fraud is based mainly on the theory that Neofes collaborated with Gray to sell the company to Brown and Sheldon Hicks at a price far in excess of its value. There was some evidence that Gray had offered at one time to sell the company to someone else for $5,000. However, an inventory made by the receiver, at the time the company went broke under the management of Neofes, Brown and Sheldon Hicks, valued the assets at $18,400, and upon the receiver's sale the assets sold for $11,500. This tends to show that the company was worth somewhat near the price that was paid by Neofes, Brown and Hicks, and overcomes the very weak suggestion of fraud arising from the testimony that Gray was at one time willing to sell the company for $5,000.

The contention that Neofes conspired with Gray to "unload" the company on Brown and Hicks is based only on some statements claimed to have been made by Gray, concerning a note which Gray had signed as surety for Neofes, to the effect that the note represented Neofes' "commission" on the sale of the company. We agree with the chancellor that this evidence was not convincing, because of the unlikelihood of a commission's being paid through the method of signing a note as surety, and we think the evidence fell far short of meeting the standards of proof required to establish fraud.

■ The final claim of misrepresentation is based on the fact that Gray represented, at the time of the sale, that the company owed only one debt of $500, whereas in fact there were accounts payable in the amount of $435, an obligation for payroll taxes in the amount of $752, and a claim of Gray for back salary in the amount of $741.39. Brown testified that the back salary was paid to Gray shortly after the sale transaction was completed, and that Neofes and Hicks were of the

opinion that Gray "had it coming to him." There is nothing to indicate that the purchasers thought at that time there had been any misrepresentation concerning the back salary. The chancellor was of the opinion that the existence of the other two claims was not enough to warrant setting aside the sale for fraud, and he gave credit to the appellants for the amount of those claims. We think this was a proper solution.

The judgment is affirmed.